## Case No. 8,036.

### LANAHAN v. PATTISON.

[1 Flip. 410.] [1]

Circuit Court, W. D. Tennessee. Dec. 15, 1874.

LOTTERY TICKETS—SALE THEREOF—ILLEGAL—ALL CONTRACTS GROWING OUT OF SAME UNLAWFUL.

Under the statutes of Tennessee (Code, § 4890), any person who "vends or attempts to vend any lottery ticket in this state," etc., etc., "is guilty of a misdemeanor." Therefore, a due bill for the payment of money by an agent to a principal on account of money received by the former on sales of tickets left with him by the latter, is an unlawful contract, and cannot be enforced in the courts.

One P. S. Lanahan arranged to have a lottery drawn in the state of Missouri, and for the purpose of disposing of his tickets appointed agents to sell the same. Among others, he gave into the hands of one Jno. H. Pattison, a lot of these tickets to be sold, which Pattison disposed of, but not being able, or unwilling, to pay over the money realized from the sales, agreed to give and did give his due bill to Lanahan for the amount claimed by the former. Not paying this sum, Lanahan instituted this suit.

Randolph, Hammond & Jordan, for plaintiff.

L. B. McFarland, for defendant.

WITHEY, District Judge. The plea sets up in bar of plaintiff's action that the due bill was given for the payment of the proceeds of certain lottery tickets sold by defendant for plaintiff in the state of Tennessee, which sale was, by the laws of Tennessee, prohibited, and made a misdemeanor, punishable by fine and imprisonment, wherefore the contract was unlawful and void. To this plea plaintiff interposes a demurrer, in which he says the said plea is no defense in law to the plaintiff's cause of action.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

The law of Tennessee provides that "if any person vend, or attempt to vend * * * any lottery ticket in this state in any scheme to be drawn in this or in any other state or country, he is guilty of a misdemeanor, and, on conviction, shall be fined $500 and imprisoned one month in the county jail." Code Tenn. § 4890. The effect of this statute is to prohibit the sale of lottery tickets in Tennessee, whether to be drawn in the state or in any other place. The tickets in question were issued and to be drawn in Missouri, and were sold in Memphis, Tennessee, by defendant as agent of the plaintiff. The defendant did not pay over the proceeds to his principal, but gave the due bill in question by which he contracted to pay.

It is well settled that "no action can be maintained on a contract, the consideration of which is either wicked in itself or prohibited by law." Armstrong v. Toler, 11 Wheat. [24 U. S.] 304. The plaintiff had arranged a lottery scheme, and placed tickets in defendant's hands, to be sold in Tennessee, on an agreement by defendant, express or implied, to sell tickets at Memphis and account for the proceeds arising from such sale. Was not that an agreement by defendant to do an act for plaintiff which the law of Tennessee prohibits? And was not the consideration of defendant's promise to pay over the proceeds, based upon that which the law prohibits?

Plaintiff's title to the money would in such cases be clearly founded on an unlawful contract—a contract by which defendant was to sell lottery tickets in Tennessee and pay over the proceeds. You cannot separate the agreement to pay over the proceeds from the unlawful sale. It is an indebtedness on a contract forbidden by law, and the fact that the promise to pay was changed into the form of a written due bill cannot change the fact that the consideration was illegal.

The due bill was given for the very money claimed to be due from the sale of the tickets. The suit is between the original parties to the illegal transaction, and the promise, evidenced by the due bill, has its consideration in an arrangement forbidden by law. All such promises are void. This is not a case of subsequent or collateral contract, the direct or immediate consideration of which is not illegal, but is a contract based squarely on the illegal transaction—grows immediately out of, and is connected with, the illegal sale.

The rule goes so far that, if the contract be in part only connected with the illegal consideration, and growing immediately out of it, though it be a new contract, it is equally tainted, and cannot be enforced. The law leaves the parties as it finds them, and will not aid a particeps criminis to enforce his exactions, which originate in violations of law. The demurrer is overruled.